IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SPENCER MAYHEW and ROSALIE NOREN, individually and behalf on all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CANDID COLOR SYSTEMS, INC., an Oklahoma corporation, and<br><br>KABANCE PHOTO SERVICES, INC., a voluntary unincorporated association based in Missouri.<br><br>        Defendants. | 3:23-cv-02964-DWD |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Spencer Mayhew ("Mayhew") and Rosalie Noren ("Noren," and together with Mayhew, "Plaintiffs"), individually and on behalf of all others similarly situated, bring under Federal Rules of Civil Procedure 15(a)(1)(B) and 23 this First Amended Class Action Complaint against Defendants Candid Color Systems, Inc. ("Candid Color") and Kabance Photo Services, Inc. ("Kabance," and together with Candid Color, "Defendants"). In support of their First Amended Class Action Complaint, Plaintiffs state and allege as follows:

### NATURE OF THE CASE

1.      This is a class action for damages arising from Defendants' violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et. seq*. ("BIPA"). Defendants have violated BIPA by illegally collecting and using Plaintiffs' biometric identifiers and biometric information ("biometrics") without informed written consent, and are understood to have done the same to countless other similarly situated individuals.

2.    The Illinois legislature has recognized that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual;  therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." *Id.*

3.    In response to these concerns, the legislature enacted BIPA, which provides that a private entity may not obtain or possess a person's biometrics unless it: (1) informs that person in writing that biometrics will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometrics are being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometrics; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying the biometrics it collects or stores. Furthermore, BIPA prohibits private entities from profiting in any way from a person's biometrics.

4.    Candid Color provides an online platform for the marketing and sale of photos taken at school graduation ceremonies and youth sporting events (among other types of events).

5.    Candid Color's platform use facial recognition technology. In Candid Color's words, its "[i]ntegrated facial recognition makes finding images easy," because "consumers can click on one of their images to see all of their images." In other words, Candid Color's facial recognition software can identify facial images in a particular photograph and locate potentially-matching facial images among other photographs in a gallery. This can be done only by extracting from each photo data representing the unique geometry of each facial image so that comparisons can be made. Kabance is a photography company that has used Candid Color's

platform—and its integrated facial recognition—to market and sell photos, including those of Plaintiffs Spencer Mayhew, Rosalie Noren, and others.

6.     Under BIPA, "scan[s] of . . . face geometry" are biometrics, 740 ILCS 14/10, so Defendants cannot collect or use them unless BIPA is complied with. Yet, as described further in this First Amended Complaint, Defendants do not comply with BIPA. They have collected, stored, used, and profited from the biometrics of hundreds of Illinois residents, many of whom never purposefully involved themselves with Defendants or had any idea that Defendants were collecting their biometrics.

7.     Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") to recover the statutory damages that BIPA authorizes for its violations.

## PARTIES

8.     Plaintiff Spencer Mayhew is, and at all times relevant to this action has been, a resident citizen of Madison County, Illinois.

9.     Plaintiff Rosalie Noren is, and at all times relevant to this action has been, a resident citizen of Christian County, Illinois.

10.     Defendant Candid Color is an Oklahoma corporation with its principal place of business in Oklahoma. It may be served through the Oklahoma Secretary of State at 421 N.W. 13th Street, Suite 210, Oklahoma City, Oklahoma 73103.

11.     Defendant Kabance is, upon information and belief, a voluntary unincorporated association under 735 ILCS 5/2-209.1. According to information on file with the Missouri Secretary of State, Kabance was incorporated as a Missouri corporation on January 3, 1995, but was administratively dissolved on August 2, 2001. Although Kabance continues to hold itself out as a corporation and does business in Missouri and Illinois, it does not appear to be registered to

do business or incorporated in either of those jurisdictions or elsewhere. Kabance may be served at its principal office located at 5015 Hampton Avenue, St. Louis, Missouri 63019.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants under 735 ILCS 5/2-209(a)(1) and (7) because Defendants, by themselves or through agents, have transacted business in this State and made or performed contracts or promises substantially connected with this state as described throughout this First Amended Complaint.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, as described throughout this First Amended Complaint.

## FACTS COMMON TO ALL COUNTS

*BIPA Regulates the Use of Illinois Citizens' Biometrics*

14.     In the early 2000s, companies began experimenting with "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c).

15.     One such company, Pay By Touch, provided retailers throughout Illinois with fingerprint scanners that were used to collect customers' biometric information and link it to their financial accounts. In 2007, Pay By Touch filed for bankruptcy. The bankruptcy trustee listed the customers' biometric information as an asset and sought to sell it to pay off creditors.

16.     The Illinois legislature was concerned by the prospect of unique biometric identifiers being sold or otherwise distributed without the consent of the Illinois citizens to which they belonged. In 2008, the legislature responded to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information" by enacting BIPA. Illinois House Transcript, 2008 Reg. Sess. No. 276.

4

17.     BIPA Section 15(a) provides that

[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

18.     Under BIPA Section 15(b), it is unlawful for a private entity to

collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

(1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used: and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

19.     And under BIPA Section 15(c), "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

20.     As described throughout this First Amended Complaint, Defendants violated all three prongs of BIPA Section 15(b) by collecting, storing, and using biometrics without informed written consent. Defendants also violated BIPA Section 15(a) by failing to provide a publicly-available written policy regarding their schedule and guidelines for retaining and permanently destroying biometrics. Finally, Defendants violated BIPA Section 15(c) by using biometrics to facilitate the sale of photographs through the Candid Color online platform.

***Candid Color's Platform Uses Biometrics***

21.     Candid Color represents itself as "a leader in event photography products and services, connecting photographers with innovative products and workflow solutions that increase sales, and improve overall efficiency." According to Candid Color, it "ha[s] the tools to help [photographers] effectively market and sell images from events both small and large."

22.     The products and services that Candid Color offers include "a robust, mobile-optimized Ecommerce platform." Candid Color collects an "Ecommerce fee" ranging from 2% to 6% or more on the photos purchased through its "Ecommerce platform."

23.     The features available through Candid Color's "Ecommerce platform" include facial recognition. Candid Color tells potential photographer clients that "[i]ntegrated facial recognition makes finding images easy," and describes its facial recognition feature as follows: "With this ability built into our website your consumers can click on one of their images to see all of their images. By eliminating the need to search for their images customers are more likely to buy."

24.     Candid Color claims that benefits of its facial recognition feature include "ID[ing] more images faster and more accurately," and that "[p]hotographers love to use our facial recognition feature to get more images to consumers FAST."

25.     Candid Color's facial recognition feature is made possible only through the collection of biometrics.

26.     Biometrics as defined under BIPA include "scan[s] of . . . face geometry." 740 ILCS 14/10.

27.     Upon information and belief, Candid Color's facial recognition feature works by scanning photographs for facial images and extracting data representing the unique geometry of each facial image in each photograph (sometimes called a "faceprint").

28.     The image below, taken from a page on Candid Color's website touting the facial recognition feature,[1] illustrates how facial recognition extracts a faceprint, which then can be used to locate other photographs that are likely to contain the same face:

## Facial Recognition

An easier and FASTER way for your customers to view their pictures.



## This is a game changer

Finally, the solution we have been looking for in photography. It will change how you shoot events. You can now shoot events you could not market in the past, including:

- Graduation Processionals
- Graduation Friends and Family
- Buddy Shots
- Large Parties

29.     The illustration, which shows a geometric grid of dots and lines superimposed over a young woman's face, is a visual representation of how a faceprint is extracted from a photograph containing a facial image.

30.     Candid Color therefore facilitates the sale of photographs through its "Ecommerce platform" by collecting the biometrics of the individuals depicted in photographs uploaded to the platform, even if those individuals never knowingly dealt with Candid Color.

---

[1] https://www.candid.com/facial-recognition/

***Kabance is Part of Candid Color's "Grad Photo Network"***

31.     Candid Color owns the trademark for and sometimes does business as "Grad Photo Network." Candid Color represents that Grad Photo Network is "the largest network of professional photographers for graduation and commencement ceremonies."

32.     Candid Color actively maintains a website for its Grad Photo Network at https://www.gradphotonetwork.com/ (the "Grad Photo Network Website"). The Grad Photo Network Website (which states that it is owned by Candid Color) is part of Candid Color's "Ecommerce platform."

33.     Kabance is a photography company that is part of the Grad Photo Network. Photos that Kabance takes as part of the Grad Photo Network, including those of Plaintiffs, are made available for sale on the Grad Photo Network Website.

***Defendants Collected, Used, and Profited from Plaintiffs' Biometrics Without Their Consent***

**Plaintiff Spencer Mayhew**

34.     Plaintiff Spencer Mayhew graduated from Collinsville High School in 2023. He attended the school's graduation ceremony held on May 13, 2023, at Collinsville High School, 2201 S. Morrison Avenue, Collinsville, St. Clair County, Illinois 62234.

35.     During the graduation ceremony, photographers working on behalf of Kabance, as part of the Grad Photo Network, took photos of Mayhew, and subsequently uploaded them to the Grad Photo Network website. The photos of Mayhew can be viewed by accessing the Grad Photo Network Website at https://www.gradphotonetwork.com/QPPlus/SearchNames.aspx?EventID=2244221&_AccountNumber=32298, entering the last name "Mayhew," clicking the "Continue" button, and then clicking the "View Proofs" button next to Mayhew's name.

36. When any individual photo of Mayhew on the Grad Photo Network Website is selected (by clicking on it), a dotted-line rectangular field automatically appears around Mayhew's face.

37. Clicking inside the rectangular field that appears around Mayhew's face reloads the webpage and returns other photos depicting Mayhew. The address of the webpage that is returned (https://www.gradphotonetwork.com/QPPlus/Proofs.aspx?EventID=2244221&AccountNumber=32298&FaceId=1162829) includes, at the end, a "FaceId" that is unique to Mayhew.

38. This functionality is not limited to Mayhew. One of the photos of Mayhew depicts a school official handing Mayhew his diploma. A dotted-line rectangular field also appears around the school official's face, and clicking within that field reloads the webpage and returns other photos depicting the school official. Many of those photos depict the school official handing a diploma to other students, and the other students likewise appear with a dotted-line rectangular field around their faces. Clicking within the field around any student's face reloads the webpage and returns other photos depicting that student. With respect to both the school official and the other students, the webpage address that is returned after clicking on a person's face includes at the end a "FaceID" that is unique to that person.

39. This functionality shows—consistent with Candid Color's representations described in paragraphs 21 through 24 and 28 through 29, above—that Kabance used Candid Color's "Ecommerce platform" to recognize Mayhew's face, extract Mayhew's faceprint, and compile photos containing Mayhew's face. Defendants therefore collected Mayhew's biometrics.

40. After Mayhew's graduation ceremony, his mother received an email with a link to the Grad Photo Network website soliciting her to purchase photos of Mayhew (the "Solicitation Email").

41.     The Solicitation Email was sent by "Kabance Photo Services, Inc." from the email address "YourPhotos@kylekabance.picsemail.com." The picsemail.com web address redirects to Candid Color's website (https://www.candid.com/), and therefore, upon information and belief, is owned by Candid Color.

42.     When the link in the Solicitation Email is accessed, Mayhew's photos appear with the same dotted-line rectangular field and the same functionality as described in paragraph 23, above.

43.     Mayhew's mother, who is an Illinois resident, purchased photos of Mayhew through the Grad Photo Network website (Order ID: VG13016798). Mayhew's mother purchased both digital prints and physical prints that were shipped to her residence in Illinois. The confirmation email that Mayhew's mother received for her purchase listed her billing and shipping address in Collinsville, Illinois. The confirmation email, like the Solicitation Email, was sent by "Kabance Photo Services, Inc." from the email address "YourPhotos@kylekabance.picsemail.com."

44.     Mayhew was never informed (in Illinois or elsewhere) that Defendants would collect or use his biometrics.

45.     Mayhew was never informed (in Illinois or elsewhere) that Defendants would profit from the use of his biometrics by using them to locate photographs of him taken at the graduation ceremony and solicit his family to purchase the photographs.

46.     Mayhew never gave Candid Color consent (in Illinois or elsewhere) to collect, use, or profit from his biometrics.

**Plaintiff Rosalie Noren**

47.     Plaintiff Rosalie Noren graduated from Blackburn College in 2021. She attended the school's graduation ceremony held on May 15, 2021, at Blackburn College in Carlinville, Illinois. Blackburn College is a private institution.

48.     During the graduation ceremony, photographers working on behalf of Kabance, as part of the Grad Photo Network, took photos of Noren, and subsequently uploaded them to the Grad Photo Network website. The photos of Noren can be viewed by accessing the Grad Photo Network Website at https://www.gradphotonetwork.com/QPPlus/SearchNames.aspx?EventID=2147496&AccountNumber=32298, entering the last name "Noren," clicking the "Continue" button, and then clicking the "View Proofs" button next to Noren's name.

49.     When some individual photos of Noren on the Grad Photo Network Website are selected (by clicking on them), a dotted-line rectangular field automatically appears around Noren's face. Notably, however, this functionality is not present for the photos in which Noren is wearing a face mask.

50.     For the photos for which the rectangular field appears around Noren's face, clicking inside the rectangular field reloads the webpage and returns other photos depicting Noren. The address of the webpage that is returned (https://www.gradphotonetwork.com/QPPlus/Proofs.aspx?EventID=2147496&AccountNumber=32298&FaceId=604077) includes, at the end, a "FaceId" that is specific to Noren.

51.     This functionality is not limited to Noren. Some of the photos of Noren depict her with other graduates or school officials. In most cases, a dotted-line rectangular field also appears around those persons' faces, and clicking within any of those fields reloads the webpage and returns other photos depicting that person. In each case, the webpage address that is returned after clicking on a person's face includes at the end a "FaceID" that is unique to that person. Notably, however, this functionality is not present for persons who are wearing face masks.

52.     This functionality shows—consistent with Candid Color's representations described in paragraphs 21 through 24 and 28 through 29, above— that Kabance used Candid Color's "Ecommerce platform" to recognize Noren's face, extract Noren's faceprint, and compile photos containing Noren's face. Defendants therefore collected Noren's biometrics.

53.     After Noren's graduation, she believes that she received one or more emails soliciting her to purchase the photos like that described in paragraphs 40 through 41.

***Defendants Have Collected, Used, and Profited from the Biometrics of Countless Other Illinois Citizens***

54.     The Grad Photo Network Website hosts far more photos than just those of Mayhew and Noren.

55.     Kabance's account on the Grad Photo Network Website, for example, hosts photos of other participants in the Collinsville High School and Blackburn College graduation ceremonies, as well as photos from other events held in Illinois that likely depict Illinois residents.

56.     Upon information and belief, Defendants have collected the biometrics (in the form of data representing the unique geometry of facial images) of hundreds of other individuals whose facial images are contained in photographs uploaded to the Grad Photo Network website in the same manner as described above with respect to the photos of Mayhew and Noren.

57.     Upon information and belief, Defendants do not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying the biometrics in their possession. Indeed, Candid Color represents that it stores images uploaded to its "Ecommerce platform" for "15+ years." Given the functionality described in paragraph 23, above, it can reasonably be inferred that biometrics are stored on the Grad Photo Network Website for the same length of time to maintain that functionality.

58.     Upon information and belief, Candid Color has derived revenue or profits from the sale of photographs of Illinois citizens taken at Illinois-located events and benefits from its purposeful, intentional commercial relationship with photographers who are based in Illinois or take photos at events held in Illinois, including Kabance.

59.     Upon information and belief, Kabance has derived revenue or profits from the sale of photographs of Illinois citizens taken at Illinois-located events and benefits from its purposeful, intentional commercial relationship with entities that are based in Illinois, such as Collinsville High School and Blackburn College.

60.     Upon information and belief, Defendants' collection, storage, use, and profit from the biometrics of Illinois residents all have been done without the informed written consent of the subject individuals (or their legal representatives).

61.     Candid Color's "Ecommerce platform" includes not just the Grad Photo Network Website, but also online sales platforms under the names "TSS Photography" (https://orders.tssphotography.com/), "Party Pics" or "Party Pic Network" (https://www.partypics.com/), "Quic Pics" (https://quicpics.com/), "Race Photo Network" (https://www.racephotonetwork.com/), and "Team Photo Network" (https://www.teamphotonetwork.com/).

62.     Upon information and belief, in addition to Kabance, other photographers operating in Illinois have used the various online platforms within Candid Color "Ecommerce platform" to capture the biometrics of Illinois residents. Though the identities of those photographers presently are unknown to Plaintiffs, they presumably are known to Candid Color, and discovery can determine whether those photographers also collected biometrics (or facilitated Candid Color's collection of biometrics) by using Candid Color's platform.

**Defendants' Collection and Use of Biometrics Violates BIPA**

63.     Defendants' practice of collecting, storing, using, and profiting from Illinois' citizens biometrics violates BIPA Sections 15(a), (b)(1)–(3), and (c).

64.     **BIPA Section 15(a).** Defendants possess biometrics, but do not make available to the public a written policy that establishes a retention schedule and guidelines ensuring that the biometrics they collect are destroyed when the initial purpose for collecting them has been satisfied or within three years of the individual's last interaction with Defendants, whichever comes first, and do not comply with those requirements. Defendants therefore violate BIPA Section 15(a).

65.     **BIPA Section 15(b)(1).** Defendants collect, capture, receive through trade, or otherwise obtain biometrics without first informing the subject (or the subject's legally authorized representative) in writing that biometrics are being collected or stored. Defendants therefore violate BIPA Section 15(b)(1).

66.     **BIPA Section 15(b)(2).** Defendants collect, capture, receive through trade, or otherwise obtain biometrics without first informing the subject (or the subject's legally authorized representative) in writing of the specific purpose and length of term for which the biometrics are being collected, stored, or used. Defendants therefore violate BIPA Section 15(b)(2).

67.     **BIPA Section 15(b)(3).** Defendants collect, capture, receive through trade, or otherwise obtain biometrics without first receiving from the subject (or the subject's legally authorized representative) an executed written release. Defendants therefore violate BIPA Section 15(b)(3).

68.     **BIPA Section 15(c).** Defendants profit from the biometrics that they possess by using them to facilitate the sale of photographs through the Grad Photo Network Website. Defendants therefore violate BIPA Section 15(b)(3).

## CLASS ALLEGATIONS

69.     This action is brought under Rule 23 of the Federal Rules of Civil Procedure by the named Plaintiffs on their own behalf and on behalf of a proposed Class of all other persons similarly situated, defined as follows:

> All residents of the State of Illinois whose biometric information or biometric identifiers were collected, captured, purchased, received through trade, or otherwise obtained by, or profited from by Defendants while residing in Illinois.

70.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members presently is unknown to Plaintiffs, it is ascertainable by appropriate discovery or is known or available to Defendants. Upon information and belief, the class includes thousands of members.

71.     Common questions of law or fact arising from Defendants' conduct exist as to all members of the Class. These common questions include, without limitation:

> a.     Whether Defendants captured, collected, stored or used the biometrics of Plaintiffs or the Class members.
>
> b.     Whether Defendants informed Plaintiffs or the Class members in writing that their biometrics were being captured, collected, stored, or used.
>
> c.     Whether Defendants informed in writing Plaintiffs or the Class members of the specific purpose and length of term for which their biometrics were being captured, collected, stored, or used.
>
> d.     Whether Defendants received from Plaintiffs, the Class members, or their legally authorized representative an executed written release before Defendants captured, collected, stored, or used their biometrics.
>
> e.     Whether Defendants developed and made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics at the earlier of the time when the initial purpose for collecting or obtaining the biometrics was satisfied or within three years of an individual's last interaction with Defendants.
>
> f.     Whether Defendants profited from Plaintiffs' or the Class members' biometrics by using them to facilitate the sale of photographs through the their online platforms.

72.     Class treatment provides a fair and efficient method for the adjudication of the controversy described in this First Amended Complaint because the controversy affects a large number of persons. Class treatment therefore provides an appropriate and effective method for Plaintiffs and Class members to assert their claims in a manner that can fairly be managed without unnecessary expense or duplication. The expense and burden of individual litigating the claims of each Class member is impracticable and would waste judicial resources.

73.     Furthermore, class treatment allows litigation of claims that, given the expenses of litigation, likely would be insufficient in monetary value to support separate actions. Class treatment allows litigation to be conducted in a single forum, which aids judicial economy and efficiency, promotes parity among the claims of individual Class members, and results in judicial consistency.

74.     In contrast, the prosecution of separate actions by individual members of the Class would create a risk of:

    a.    inconsistent or varying adjudications with respect to individual members of the Class; and

    b.    adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

75.     Plaintiffs will fairly and adequately protect the interests of the Class that they represent. Plaintiffs' interests as the Class representatives are consistent with those of the Class members.

76.     Plaintiffs are represented by counsel experienced in class action and other complex litigation.

77.     Plaintiffs and their counsel envision no difficulties in managing this case as a class action.

**COUNT I – VIOLATION OF BIPA SECTION 15(a)**
**740 ILCS 14/15(a)**
**Failure to Develop or Comply with Retention Policy**
**(By Plaintiffs and the Class Against Defendants)**

78.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

79.     BIPA Section 15(a) requires private entities in possession of biometrics to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

80.     Defendants are "private entit[ies]" as defined in BIPA Section 10 [740 ILCS 14/10] in that Candid Color is an Oklahoma corporation, Kabance is a voluntary unincorporated association, and neither is nor includes a State or local government agency.

81.     Defendants possess the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

82.     Defendants never have developed a publicly-available written policy that complies with the requirements of BIPA Section 15(a) and do not abide by such a policy.

83.     Defendants' possession of Plaintiffs' and the Class members' biometrics without developing or complying with a publicly-available written policy consistent with the requirements of BIPA Section 15(a) violates BIPA Section 15(a).

84.     Plaintiffs and the Class members are aggrieved by Candid Color's possession of their biometrics without developing or complying with a publicly-available written policy consistent with the requirements of BIPA Section 15(a).

85.     As a direct result of Defendants' violations of BIPA Section 15(a), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## COUNT II – VIOLATION OF BIPA SECTION 15(b)(1)
### 740 ILCS 14/15(b)(1)
### Failure to Inform of Collection or Storage
### (By Plaintiffs and the Class Against Defendants)

86.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

87.     BIPA Section 15(b)(1) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored." 740 ILCS 14/15(b)(1).

88.     Defendants are "private entit[ies]" as defined in BIPA Section 10 [740 ILCS 14/10] in that Candid Color is an Oklahoma corporation, Kabance is a voluntary unincorporated association, and neither is nor includes a State or local government agency.

89.     Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

90.     Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members without first informing in writing Plaintiffs or the Class members (or their legally authorized representatives) that their biometrics were being collected or stored.

91.     Defendants' collection and storage of Plaintiffs' and the Class members' biometrics without first informing them (or their legally authorized representatives) in writing violates BIPA Section 15(b)(1).

92.     Plaintiffs and the Class members are aggrieved by Defendans' collection and storage of their biometrics without having first informed them (or their legally authorized representatives) in writing as required under BIPA Section 15(b)(1).

93.     As a direct result of Defendants' violations of BIPA Section 15(b)(1), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

**COUNT III – VIOLATION OF BIPA SECTION 15(b)(2)**
**740 ILCS 14/15(b)(2)**
**Failure to Inform of Purpose and Length of Term**
**(By Plaintiffs and the Class Against Defendants)**

94.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

95.     BIPA Section 15(b)(2) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: . . . (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2).

96.     Defendants are "private entit[ies]" as defined in BIPA Section 10 [740 ILCS 14/10] in that Candid Color is an Oklahoma corporation, Kabance is a voluntary unincorporated association, and neither is nor includes a State or local government agency.

97.     Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

98.     Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members without first informing in writing Plaintiffs or the

Class members (or their legally authorized representatives) of the specific purpose and length of term for which their biometrics were being collected, stored, or used.

99.     Defendants' collection, storage, and use of Plaintiffs' and the Class members' biometrics without first informing them (or their legally authorized representatives) in writing of the specific purpose and length of term for which their biometrics were being collected, stored, or used violates BIPA Section 15(b)(2).

100.     Plaintiffs and the Class members are aggrieved by Defendants' collection and use of their biometrics without having first informed them (or their legally authorized representatives) in writing of the specific purpose and length of term for which their biometrics were being collected or used as required under BIPA Section 15(b)(2).

101.     As a direct result of Defendants' violations of BIPA Section 15(b)(2), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

## COUNT IV – VIOLATION OF BIPA SECTION 15(b)(3)
### 740 ILCS 14/15(b)(3)
### Failure to Obtain Written Release
### (By Plaintiffs and the Class Against Defendants)

102.    Plaintiffs incorporate all preceding allegations as if fully set forth herein.

103.    BIPA Section 15(b)(3) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: . . . (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b)(3).

104.    Defendants are "private entit[ies]" as defined in BIPA Section 10 [740 ILCS 14/10] in that Candid Color is an Oklahoma corporation, Kabance is a voluntary unincorporated association, and neither is nor includes a State or local government agency.

105.    Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

106.    Defendants collected, captured, received through trade, or otherwise obtained the biometrics of Plaintiffs and the Class members without first having obtained a written release executed by them or their authorized legal representative.

107.    Defendants' collection, capture, or receipt through trade of Plaintiffs' and the Class members' biometrics without first having obtained an executed written release violates BIPA Section 15(b)(3).

108.    Plaintiffs and the Class members are aggrieved by Defendants' collection, capture, or receipt through trade of their biometrics without first having obtained an executed written release as required under BIPA Section 15(b)(3).

109.     As a direct result of Defendants' violations of BIPA Section 15(b)(3), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

**COUNT V – VIOLATION OF BIPA SECTION 15(c)**
**740 ILCS 14/15(c)**
**Profiting from Biometrics**
**(By Plaintiffs and the Class Against Defendants)**

110.     Plaintiffs incorporate all preceding allegations as if fully set forth herein.

111.     BIPA Section 15(c) makes it unlawful for any private entity to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.740 ILCS 14/15(c).

112.     Defendants are "private entit[ies]" as defined in BIPA Section 10 [740 ILCS 14/10] in that Candid Color is an Oklahoma corporation, Kabance is a voluntary unincorporated association, and neither is nor includes a State or local government agency.

113.     Defendants possess the biometrics of Plaintiffs and the Class members as described throughout this First Amended Complaint.

114.     Defendants profit from the biometrics of Plaintiffs and the Class members by using them to facilitate the sale of photographs through Candid Color's "Ecommerce platform."

115.     Defendants' practice of profiting from Plaintiffs' and the Class members' biometrics violates BIPA Section 15(c).

116.     Plaintiffs and the Class members are aggrieved by Defendants' practice of profiting from their biometrics in violation of BIPA Section 15(c).

117.     As a direct result of Defendants' violations of BIPA Section 15(c), Plaintiffs and the Class members are entitled to statutory damages as set forth in BIPA Section 20 [740 ILCS 14/20].

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the proposed Class, respectfully requests the following relief with respect to each and every count alleged above:

A.      certification of this action as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointment of the undersigned as class counsel;

B.      a declaration that Defendants' conduct described throughout this First Amended Complaint violates BIPA Sections 15(a), (b)(1)–(3), and (c);

C.      injunctive and equitable relief as is necessary to protect Plaintiffs and the proposed Class from Defendants' ongoing violations of BIPA Sections 15(a), (b)(1)–(3), and (c);

D.      statutory damages in the amount of $5,000.00 for each and every intentional or reckless violation of BIPA, as allowed under BIPA Section 20(2), and statutory damages in the amount of $1,000.00 for each and every negligent violation of BIPA, as allowed under BIPA Section 20(1);

E.      their reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as allowed under BIPA Section 20(3) or other applicable law;

F.      such other relief as the Court deems just and appropriate.

Dated: October 4, 2023                    Respectfully Submitted,

**THE DRISCOLL FIRM, LLC**

By:     */s/ John J. Driscoll*
         John J. Driscoll, #6276464
         1311 Avenida Juan Ponce de Leon, 6th Floor
         San Juan, Puerto Rico 00907
         Phone: (314) 222-2605
         Fax: (314) 932-3233
         john@jjlegal.com

         **THE DRISCOLL FIRM, P.C.**
         Matthew J. Limoli, #6328051
         301 Fayetteville Street, Ste. 1825
         Raleigh, North Carolina 27601
         Phone: (919) 582-6516
         Fax: (314) 932-3233
         matthew@thedriscollfirm.com

         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 4, 2023, the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties.

         */s/ John J. Driscoll*