## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

SPENCER MAYHEW and ROSALIE NOREN,
individually and on behalf of all others similarly situated,

        Plaintiffs,

   v.

CANDID COLOR SYSTEMS, INC., an Oklahoma
corporation, and KABANCE PHOTO SERVICES,
INC., a voluntary unincorporated association based in
Missouri,

        Defendants.

Case No. 3:23-CV-2964-DWD

Hon. David W. Dugan

## DEFENDANT CANDID COLOR SYSTEMS, INC.'S MOTION
## TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION
## <u>COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

    A.    The Parties ....................................................................................... 2

    B.    Plaintiffs' Allegations ..................................................................... 3

    C.    CCS's Ecommerce Platform ............................................................ 4

    D.    Jurisdictional Facts ......................................................................... 6

ARGUMENT .................................................................................................................. 7

I.    THIS COURT SHOULD DISMISS PLAINTIFFS' FAC FOR LACK OF PERSONAL JURISDICTION ................................................................. 7

    A.    This Court Lacks General Jurisdiction Over CCS .............................. 7

    B.    This Court Lacks Specific Jurisdiction Over CCS ............................. 8

        1.    Plaintiffs' Illinois Residence, Without More, Cannot Serve As The Basis For Exercising Specific Personal Jurisdiction Over CCS ................ 8

        2.    Plaintiffs Cannot Establish Specific Personal Jurisdiction Over CCS Based On The Conduct Of CCS's Customer ..................................... 8

II.    EVEN IF CCS WERE SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS, PLAINTIFFS' FAC SHOULD BE DISMISSED UNDER RULE 12(B)(6)................................................................................................. 11

    A.    Plaintiffs' BIPA Claims Violate Illinois's Extraterritoriality Doctrine ............... 11

    B.    Plaintiffs' Claims Also Are Barred By The BIPA's "Government Contractor" Exception ......................................................... 12

    C.    Plaintiffs Otherwise Fail To Allege Viable Claims Under Sections 15(a)-(c) ....................................................................... 15

        1.    Plaintiffs Allege No Facts Showing That CCS "Possessed" Plaintiffs' Biometric Data ................................................. 15

        2.    Plaintiffs Allege No Facts Showing That CCS "Collected" Plaintiffs' Biometric Data ................................................. 16

i

3.    Plaintiffs Allege No Facts Showing That CCS "Profited From" Plaintiffs' Data ........................................................................ 17

CONCLUSION ................................................................................................................ 18

DM2\18663810.3

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ...........................................................18

*Bray v. Lathem Time Co.*, 2020 WL 1492742 (C.D. Ill. Mar. 27, 2020) ........................9

*Bristol Myers v. Super. Court*, 137 S. Ct. 1773 (2017) ....................................................7

*Carson ex rel. Nelson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir. 1983) .....................4

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..................................................................7

*Doe v. Blackburn Coll.*, No. 06-3205, 2007 WL 647324 (C.D. Ill. Feb. 27, 2007) .....................14

*Ford Motor Co. v. Montana Eighth Dist. Judicial Ct.*, 141 S.Ct. 1017 (2021) .............................7

*Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ...............11

*Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020) ...................16

*Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ...................17

*Jones v. Microsoft Corp.*, No. 22-CV-3437, 2023 WL 130495 (N.D. Ill. Jan. 9, 2023) ...........................................................................................................................17

*McGoveran v. Amazon Web Services, Inc.*, 488 F. Supp. 3d 714 (S.D. Ill. 2020) ................... 9-10

*McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .....................................................................................................................5, 11

*Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ....................11

*N. Grain Mktg., LLC v. Greving*, 743 F.3d 487 (7th Cir. 2014) .....................................7

*Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088 (N.D. Ill. 2019) ...............................12

*Redd v. Amazon Web Servs., Inc.*, No. 22 C 6779, 2023 WL 3505264 (N.D. Ill. May 17, 2023) ...............................................................................................................9

*Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................11

*Rogers v. City of Hobart, Indiana*, 996 F.3d 812 (7th Cir. 2021) ............................... 7-8

*Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122 (N.D. Ill. May 30, 2020) ................... 9-10

*Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ...............................................................................................................16

*Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339 (N.D. Ill. 2021) .........................................11

DM2\18663810.3

*Vance v. Amazon.com*, No. 20-CV-1084, 2022 WL 12306231 (W.D. Wash. Oct. 17, 2022) ..................................................................................................................12

*Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021) ........................................18

*Walden v. Fiore*, 571 U.S. 277 (2014)...........................................................................................7

*Zellmer v. Facebook, Inc.*, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022)....................................17

**State Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) .........................................11

*Barnett v. Apple Inc.*, 2022 IL App (1st) 220187 .........................................................................15

*Bd. of Ed. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17 (Ill. 1941) ..................................................................................................................14

*Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124 ...................................14

*Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U ..................................................... 12-14

*Hogan v. Amazon.com, Inc.*, No. 21 CH 02330 (Cir. Ct. Cook Cty.)............................................18

*Landau v. CNA Fin. Corp.*, 886 N.E.2d 405 (Ill. App. 2008) ......................................................11

*People v. Ward*, 215 Ill. 2d 317 (2005)........................................................................................15

*Stauffer v. Sky Zone Franchise Group, LLC*, No. 19-L-311 (Cir. Ct. St. Clair Cty.) ...................15

**State Statutes**

30 ILCS 805/3(a) ...........................................................................................................................14

735 ILCS 5/2-209(c) ........................................................................................................................7

740 ILCS 14/15(a) .................................................................................................................. 4, 15-16

740 ILCS 14/15(b) .................................................................................................................. 4, 16-17

740 ILCS 14/15(c) .................................................................................................................. 4, 15, 17-18

740 ILCS 14/25(e) .................................................................................................................. 1, 12-14

**Rules**

Fed. R. Evid. 201(b)......................................................................................................................13

Rule 12(b)(2)...........................................................................................................................5, 7, 11

Rule 12(b)(6)..........................................................................................................................5, 11, 14

iv

## **INTRODUCTION**

Spencer Mayhew and newly named Plaintiff Rosalie Noren (collectively, "Plaintiffs") have filed a First Amended Complaint (the "FAC") against Candid Color Systems, Inc. ("CCS"), a company based in Oklahoma with no relevant connection to Illinois, for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"). Plaintiffs, two Illinois residents, allege that [i] photographers affiliated with a CCS customer photographed Mr. Mayhew during his high school graduation ceremony, [ii] photographers affiliated with the same CCS customer photographed Ms. Noren during her college graduation ceremony, [iii] their "biometric identifiers" and/or "biometric information" (individually and collectively, "biometric data") were extracted from the photos using CCS's "facial recognition technology," and [iv] CCS did not provide notice or obtain written consent regarding the collection of Plaintiffs' purported biometric data. The Court should dismiss Plaintiffs' FAC for the following reasons:

*First*, the Court lacks personal jurisdiction over CCS because CCS is not "at home" in Illinois, and Plaintiffs fail plausibly to plead facts to support specific personal jurisdiction.

*Second*, even *if* personal jurisdiction existed, the BIPA could apply only if CCS's alleged conduct occurred primarily and substantially in Illinois. Plaintiffs fail to allege that CSS engaged in ***any*** relevant conduct in Illinois. They allege only that a CCS customer(s) photographed Plaintiffs and made their images available for purchase online using CCS's platform – allegations that fail to subject the customer(s) to regulation under the BIPA, let alone CCS.

*Third*, Plaintiffs' claims are barred under the BIPA's "government contractor" exception set forth in Section 25(e) of the statute. Plaintiffs' FAC, read in conjunction with documents incorporated into the FAC and/or of which the Court can take judicial notice, establish that the relevant photographs were taken in connection with [i] a CCS customer's agreement with Collinsville Community Unit School District 10 to provide photography services at the May 13, 2023 Collinsville High School

graduation ceremony and [ii] a CCS customer's agreement with Blackburn College to provide photography services at the May 15, 2021 Blackburn College graduation ceremony. CCS's customer organized Plaintiffs' photos and made them available for sale online (as required under the respective agreements) using CCS's software product. Thus, CCS functioned as a "subcontractor" by providing its customer and the two respective schools with use of its software.

*Fourth*, Plaintiffs otherwise fail to allege claims under BIPA Sections 15(a)-(c). Accordingly, Plaintiffs' FAC should be dismissed with prejudice.

## BACKGROUND

### A.     The Parties

CCS is a photography business that provides its customers (*i.e.*, professional photographers) with various products and services, including software that photographers can use to upload, organize, and sell their photographs to their end-user customers.[1] *See, e.g.*, ECF No. 21, FAC ¶ 23; *id.* ¶ 4 ("[CCS] provides an online platform for the marketing and sale of photos taken at school graduation ceremonies and youth sporting events (among other types of events)."). Plaintiffs claim that CCS's platform uses "facial recognition technology," which "can identify facial images in a particular photograph and locate potentially matching facial images among other photographs in a gallery." *Id.* ¶ 5. Plaintiffs also claim that this facial recognition technology is integrated into CCS's web-based "Ecommerce platform" product, and that the "facial recognition feature is made possible only through the collection of biometrics." *Id.* ¶¶ 22, 25.

---

[1] For purposes of CCS's photography software products, CCS customers are professional photographers who use the software to operate their photography businesses. These professional photographers interact directly with end-user consumers (*i.e.*, individuals being photographed, along with their relatives, friends, etc. who may wish to purchase the photos). CCS interacts directly only with its professional-photographer customers – not end users. To avoid confusion, in this Motion the term "customer" refers to a professional photographer who has used CCS's software, and the term "end user" refers to an individual who has been photographed by a CCS customer (or a consumer who has purchased photos taken by a CCS customer).

Co-Defendant Kabance Photo Services, Inc. ("Kabance") is a photography business and CCS customer who uses CCS's Ecommerce platform to market its business to schools regarding events (*e.g.*, graduation ceremonies) at which schools may wish to hire a professional photographer(s). *Id.* ¶¶ 4-5, 33, 39, 41, 43.

Mr. Mayhew and Ms. Noren are Illinois residents who claim they were photographed "by photographers working on behalf of Kabance" in May 2023 and May 2021, respectively, and that their images were subsequently uploaded to the Ecommerce platform. *See id.* ¶¶ 8-9, 34-35, 47-48.

### B.   Plaintiffs' Allegations

Mr. Mayhew claims that "photographers working on behalf of Kabance, as part of the Grad Photo Network" (for which CCS allegedly owns the trademark) photographed him during his graduation from Collinsville High School, uploaded the photos to the Grad Photo Network website, and later emailed his mother a link through which she could view and purchase his graduation photos. *See id.* ¶¶ 31, 34-38, 40-43.   (Mr. Mayhew's allegations do not explain how the photographers obtained his mother's name and email address.)   According to Mr. Mayhew, when viewing the photos on the Grad Photo Network website, a "dotted-line rectangular field automatically appears around [his] face." *Id.* ¶ 36.   Mr. Mayhew alleges that the appearance of this "rectangular field" around his face indicates that CCS's Ecommerce platform "extracted [his] faceprint and therefore collected his biometrics." *Id.* ¶ 39.

Ms. Noren similarly claims that "photographers working on behalf of Kabance, as part of the Grad Photo Network" photographed her during her graduation from Blackburn College, uploaded the photos to the Grad Photo Network website, and later emailed her "soliciting her to purchase the photos." *See id.* ¶¶ 47-48, 53.   (Ms. Noren's allegations do not explain how the photographers obtained her name and email address.)   Like Mr. Mayhew, Ms. Noren alleges that the photos on the Grad Photo Network website depict a "dotted-line rectangular field . . . around [her] face," allegedly

DM2\18663810.3

indicating that the Ecommerce platform "extracted [her] faceprint" and "therefore collected [her] biometrics." *Id.* ¶¶ 49, 52.

Based on these allegations, Plaintiffs allege that CCS and Kabance violated Sections 15(a), 15(b), and 15(c) of the BIPA by: [i] failing to publish and comply with a public retention schedule regarding the storage of Plaintiffs' biometric data, in alleged violation of BIPA Section 15(a), *e.g.*, *id.* ¶ 83; [ii] collecting Plaintiffs' biometric data without providing the requisite notice and obtaining their written consent, in alleged violation of BIPA Section 15(b), *e.g.*, *id.* ¶¶ 91, 99, 107; and [iii] "profit[ing] from the biometrics of . . . Plaintiffs and the Class members by using [the biometrics] to facilitate the sale of photographs," in alleged violation of BIPA Section 15(c), *e.g.*, *id.* ¶¶ 114-15.

## C.    CCS's Ecommerce Platform

The FAC refers to CCS's "CORE" software product – a web-based product that includes a customizable "Ecommerce" platform used by professional photographers.  Decl. of Demetri Barges ¶¶ 8, 21 (attached hereto as **Exhibit A**).[2]  CCS customers can configure the Ecommerce platform to fit their specific needs, including by changing the appearance and functionality of the consumer-facing webpages associated with their Ecommerce accounts; creating personal, team, class, and/or event galleries; offering image galleries with (or without) event or personal password protection; and electing to use one or more optional software features.  *Id.* ¶ 9.

To organize, manage, and sell their photos using the Ecommerce platform, customers first upload their images to their respective Ecommerce accounts.  *Id.* ¶ 10.  Once the images are uploaded, customers typically sort the photos by end user using one of several possible methods.  *Id.*  Sorting photos in this way allows photographers to present online galleries to end users containing the photo(s) of the individual in which they are interested.  *Id.*  CCS customers can organize and sort their

---

[2] "To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits."  *Carson ex rel. Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

4

photos based on personal preference, and they can choose to do so with or without tools offered by CCS. *Id.* ¶ 11. Customers can, for instance, sort their photos using a manual process, or they can sort their photos using a CCS product like "PhotoMatch," which involves a CCS-customer photographer asking each end user (or the end user's guardian) for his or her contact information (*e.g.*, name; email address; phone number) at the time he or she is photographed, such that the photographer can link the contact information to the end user's image(s) in real time. *Id.* ¶¶ 12-13. Customers have also been able to elect to use an optional "facial-recognition" tool to sort and organize their photos. *Id.* ¶ 15. This tool – referred to as CCS's "image-matching" tool – is one of many features that customers have been able to utilize through the Ecommerce platform. *Id.*

CCS's records reflect that an individual named Spencer Mayhew was photographed four times during the May 13, 2023 graduation ceremony held at Collinsville High School in Collinsville, Illinois. *Id.* ¶ 23.[3] Company records further reflect that a photographer affiliated with Kabance – a photography business based in St. Louis, Missouri – took the four photos of Mr. Mayhew and uploaded them to Kabance's Ecommerce account. *Id.*; *see also* Barges Decl. Ex. 1 (header of webpage containing proofs of photos: "KABANCE Photo Services, Inc., 5015 Hampton Ave., St. Louis MO 63109").

In addition, CCS's records reflect that an individual named Rosalie Noren was photographed six times during the May 15, 2021 graduation ceremony held at Blackburn College in Carlinville,

---

[3] The four photographs of Mr. Mayhew appear in the screenshot attached to Mr. Barges's declaration as Exhibit 1. The Court can consider this screenshot in ruling on CCS's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction **and** Rule 12(b)(6) motion to dismiss for failure to state a claim. Regarding Rule 12(b)(6), Plaintiffs' FAC repeatedly refers to the photographs of Mr. Mayhew by describing how, when, and where they were taken, how they were uploaded to the Ecommerce platform, and how they appeared when viewed online. *See, e.g.*, FAC ¶¶ 35-38, 40-43. Thus, under the incorporation-by-reference doctrine, the Court may consider the photos as depicted in Exhibit 1 in ruling on CCS's Motion. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran II*"), 2021 WL 4502089, at *4 n.3 (D. Del. Sept. 30, 2021) (where plaintiffs' complaint "cite[d] the AWS website multiple times," court could consider relevant documents depicted on that website).

Illinois.  Barges Decl. ¶ 24.  Company records further reflect that a photographer affiliated with St. Louis-based Kabance took the six photos of Ms. Noren and uploaded them to Kabance's Ecommerce account.  *Id.*; *see also* Barges Decl. Ex. 2.[4]

### D.    Jurisdictional Facts

CCS is an Oklahoma corporation with its principal place of business in Oklahoma.  Barges Decl. ¶ 5.  Neither CCS nor any CCS affiliate engages in sales activity targeted specifically at Illinois. *See id.* ¶ 18.  Instead, CCS's Ecommerce platform is available for sale throughout the U.S. and beyond – wherever CCS's customers do business.  *Id.*  CCS does not provide any hardware, setup-related services, or technical support at customer sites in Illinois.  *See id.* ¶ 17.  No data relating to CCS's Ecommerce platform is stored on servers in Illinois, and the equipment used to operate the platform is located entirely outside of Illinois.  *Id.*  CCS has no control over the photos its customers have elected to take and upload to the Ecommerce platform, including the location in which any end users are photographed.  *See id.* ¶ 25.  Nor has CCS had any control over or played any role relative to the method customers have used to sort photos uploaded to their Ecommerce accounts; instead, any decisions regarding how to sort photos have been made solely by the customers.  *See id.*

CCS owns no real property in Illinois, has no bank accounts in Illinois, and has no employees who reside in Illinois.  *Id.* ¶¶ 6-7.  CCS developed the Ecommerce platform outside of Illinois, and the team responsible for it is also located outside of Illinois.  *Id.* ¶ 16.  CCS has licensed the use of its Ecommerce platform to Kabance, which is a company headquartered in Missouri.  *Id.* ¶ 23.

---

[4] The Court can consider Exhibit 2 of Mr. Barges's declaration in ruling on this Motion for the reasons stated above in footnote 3 – namely, the FAC repeatedly refers to the photographs of Ms. Noren by describing how, when, and where they were taken, how they were uploaded to the Ecommerce platform, and how they appeared when viewed online.  *See, e.g.*, FAC ¶¶ 48-51, 53.

6

## ARGUMENT

### I.   THIS COURT SHOULD DISMISS PLAINTIFFS' FAC FOR LACK OF PERSONAL JURISDICTION

Courts may exercise personal jurisdiction only when doing so comports with due process. *Bristol Myers v. Super. Court*, 137 S. Ct. 1773, 1779 (2017).[5]  As constrained by due process, personal jurisdiction comes in two shapes: general and specific.  General jurisdiction exists only when the defendant is "at home" in the forum.  *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).  Courts in states where a defendant is at home may hear any claim against that defendant.  *Id.*  Specific jurisdiction exists only when a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers*, 137 S. Ct. at 1780.  The defendant's own "suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Plaintiffs fail to make a *prima facie* showing of personal jurisdiction.  *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).  Plaintiffs do not allege any facts that would support an Illinois court's exercise of general or specific jurisdiction over CCS, and their claims against CCS should therefore be dismissed under Rule 12(b)(2).

### A.   This Court Lacks General Jurisdiction Over CCS

General jurisdiction exists only where the defendant is "at home."  *Daimler*, 571 U.S. at 137-39.  Apart from exceptional cases, a corporation is "at home" in the state where it is incorporated and the state where it maintains its principal place of business.  *Ford Motor Co. v. Montana Eighth Dist. Judicial Ct.*, 141 S.Ct. 1017, 1024 (2021).  Plaintiffs do not appear to allege that CCS is subject to general jurisdiction in Illinois, and it is not.  CCS (an Oklahoma corporation headquartered in Oklahoma, FAC ¶ 10) is not "at home" in Illinois.

---

[5] Because the Illinois long-arm statute extends as far as the U.S. Constitution permits, 735 ILCS 5/2-209(c), the Court "need only look to whether exercising personal jurisdiction here would comport with federal due process."  *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 818 (7th Cir. 2021).

**B.      This Court Lacks Specific Jurisdiction Over CCS**

**1.      Plaintiffs' Illinois Residence, Without More, Cannot Serve As The Basis For Exercising Specific Personal Jurisdiction Over CCS**

Plaintiffs do not allege a direct connection between CCS's relevant conduct and Illinois. Plaintiffs claim they are Illinois residents, and that photographs of them were uploaded to the Ecommerce platform and analyzed using a tool that "extracted" their "faceprints." FAC ¶¶ 39, 52. Simply put, Plaintiffs' sparse allegations, and the declaration of Mr. Barges, show that Plaintiffs cannot establish the requisite Illinois connection needed to confer personal jurisdiction.  Plaintiffs' Illinois residence and their photos being taken while they were in Illinois, FAC ¶¶ 8-9, 34, 47, are the ***only*** Illinois-specific factual allegations regarding the conduct underlying their BIPA claims. Notably, Plaintiffs do ***not*** allege that the photos were uploaded to the Ecommerce platform from Illinois, or that CCS's software analyzed their "faceprints" ***in Illinois*** – nor could they, as [i] Kabance presumably uploaded the photos from its "principal office" in Missouri, and [ii] CCS's software is operated solely on equipment located outside of Illinois.  *See id.* ¶ 11; Barges Decl. ¶ 17.  At bottom, Plaintiffs' Illinois residence – without more – cannot establish personal jurisdiction in Illinois.  *See Rogers*, 996 F.3d at 819 ("The question is not whether the plaintiff experienced a particular injury or effect in the forum state but whether the defendant's conduct connects him with the forum in a meaningful way.").

**2.      Plaintiffs Cannot Establish Specific Personal Jurisdiction Over CCS Based On The Conduct Of CCS's Customer**

Even assuming Plaintiffs had alleged an Illinois nexus apart from their residence, they still cannot establish personal jurisdiction over CCS.  *First*, Plaintiffs do not allege any ***direct*** Illinois connection between themselves and CCS; they do not claim that they were photographed by (or otherwise interacted with) CCS.  Put another way, Plaintiffs merely allege that CCS is a technology vendor for the separate company that photographed them during their respective graduation

ceremonies (*i.e.*, Kabance).[6]  Even if Plaintiffs' respective relationships with ***Kabance*** were based in Illinois with respect to the alleged collection and storage of their biometric data (which Plaintiffs fail to allege), they cannot use contacts with the forum made by CCS's non-party, ***Missouri-based*** customer to establish personal jurisdiction over CCS.  *See, e.g.*, *Redd v. Amazon Web Servs., Inc.*, No. 22 C 6779, 2023 WL 3505264, at *3 (N.D. Ill. May 17, 2023) (dismissing BIPA case for lack of personal jurisdiction where "only alleged link between [defendant] AWS and Illinois runs through [non-party] Wonolo").

Courts have consistently dismissed BIPA claims for lack of personal jurisdiction when brought against out-of-state technology vendors with whom plaintiffs had no direct contact – especially where the vendors had contacts only with an out-of-state third party.  *See, e.g.*, *Bray v. Lathem Time Co.*, 2020 WL 1492742, at *3 (C.D. Ill. Mar. 27, 2020) ("Lathem notes it did not itself create any contact with Illinois.  It is the result of decisions by employers to (1) use Lathem Devices in the state, (2) enable the facial-recognition feature, and (3) enroll in PayClock Online."); *Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020) ("Without evidence that ModiFace intended to avail itself of the right to do business in Illinois or purposefully aimed its conduct at Illinois, the use of ModiFace's technology in the forum is at most a random, fortuitous, or attenuated contact.").

Judge Rosenstengel's decision in *McGoveran v. Amazon Web Services, Inc.*, 488 F. Supp. 3d 714 (S.D. Ill. 2020) ("*McGoveran I*"), is instructive.  In that case, plaintiffs alleged that defendants Amazon Web Services, Inc. ("AWS") and Pindrop Security, Inc. ("Pindrop") violated the BIPA by collecting their "voiceprints" in connection with a service "use[d] by call centers and customer service personnel to confirm the identity of callers."  *Id.* at 716.  Specifically, plaintiffs claimed that after

---

[6] The FAC repeatedly reflects that CCS-customer photographers (not CCS) took the relevant photos of Plaintiffs.  *See, e.g.*, FAC ¶¶ 21-24 (noting CCS's "photographer clients" can use the Ecommerce platform to organize and sell "their images" to end users).

someone calls an AWS client's call center, "the audio is sent to Pindrop for processing" and "Pindrop then processes the audio, analyzes the caller's unique voice biometric data, and sends the results of its analysis to AWS's servers." *Id.* at 716-17. Plaintiffs further alleged that they had called customer service representatives of "John Hancock, a third party based in Massachusetts," and that John Hancock used defendants' "biometric voiceprint authentication" technology. *Id.* at 717, 722.

On these facts, Judge Rosenstengel granted both defendants' motions to dismiss for lack of personal jurisdiction. *Id.* at 723-24. The court noted that defendants had not "reached into Illinois via telephonic or electronic means"; rather, "[i]t was Plaintiffs who made *outgoing* calls from Illinois to John Hancock call centers," after which AWS allegedly "intercepted the calls . . . and sent the audio to Pindrop for processing." *Id.* at 722 (emphasis in original); *id.* ("Nothing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs."). The court further held that:

> [T]here is no indication that either AWS or Pindrop specifically targeted Illinois citizens when they provided their voiceprinting services to John Hancock. Rather, Plaintiffs' voiceprints were collected because John Hancock chose to use Amazon Connect with Pindrop to analyze the voices of its customers. Because the litigation does not arise from contacts that Defendants themselves created with Illinois or actions purposefully directed at residents of Illinois, the Court finds that Plaintiffs have failed to make a *prima facie* showing of specific personal jurisdiction with regard to both Pindrop and AWS. Accordingly, the case must be dismissed for lack of personal jurisdiction.

*Id.* at 723.

*McGoveran I* further demonstrates that the Court lacks personal jurisdiction over CCS in this case, as the present jurisdictional facts are the same as the facts in *McGoveran I*. The BIPA claims asserted in both cases arise not from the respective defendants "direct[ing] their activities at Illinois citizens" but from the alleged conduct of out-of-state non-parties (in *McGoveran I*, John Hancock; and here, Kabance). *See also Salkauskaite*, 2020 WL 2796122, at *4 (the contacts must come from the activity of the defendant, not the activity of the plaintiff or a third party).

10

*Second*, Plaintiffs do not (and cannot) allege facts suggesting that CCS can be subject to jurisdiction based solely on interacting with Illinois residents through a website accessible to people in all 50 States and globally. *See, e.g.*, *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) ("The only connection between Wemagine and Illinois is Gutierrez. Gutierrez chose to download the Viola app. There was no directed marketing specific to Illinois, and the fact that Viola is used by Illinois residents does not, on its own, create a basis for personal jurisdiction over Wemagine."); *Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 345-46 (N.D. Ill. 2021) ("[C]ourts 'should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state.'") (citation omitted). For these reasons, the Court should dismiss the FAC under Rule 12(b)(2).

## II.      EVEN IF CCS WERE SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS, PLAINTIFFS' FAC SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.      Plaintiffs' BIPA Claims Violate Illinois's Extraterritoriality Doctrine

For similar reasons that the Court lacks personal jurisdiction, the FAC should be dismissed under Illinois's extraterritoriality doctrine. The BIPA was not "intended to have extraterritorial effect," *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017), and therefore "asserted violations . . . must have taken place in Illinois" to fall within the statute. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100, 1104 (N.D. Ill. 2017). CCS could be subject to the BIPA only if "the majority of circumstances relating to the alleged violation[s]" occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008); *see Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005) ("the circumstances relating to the claim [must have] occur[ed] primarily and substantially" in Illinois).

Plaintiffs' claims fail this test. As explained, CCS's alleged relevant conduct has no direct link to, and is several steps removed from, Illinois. Plaintiffs' Illinois residence alone does not suffice.

*See McGoveran II*, 2021 WL 4502089, at *4.  In short, Plaintiffs do not allege that CCS's conduct occurred "primarily and substantially" in Illinois, nor do they have a good faith basis to do so.  *See Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091-92 (N.D. Ill. 2019) (dismissing BIPA complaint with leave to amend where court was "unable to reasonably infer from the complaint that [plaintiff's] fingerprint was collected in Illinois").  Thus, the BIPA simply does not apply.  *See Vance v. Amazon.com*, No. 20-CV-1084, 2022 WL 12306231, at *6-8 (W.D. Wash. Oct. 17, 2022) (dismissing BIPA claims on extraterritoriality grounds).

## B.   Plaintiffs' Claims Also Are Barred By The BIPA's "Government Contractor" Exception

Plaintiffs' claims also fail for a separate and independent reason – namely, they are barred by the BIPA's "government contractor" exception.  *See* 740 ILCS 14/25(e) ("Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.").  The Illinois Appellate Court has stated that "an entity is exempt under [S]ection 25(e) if it is (1) a contractor [or in this case, a subcontractor] (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information."  *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 19, *appeal denied,* 201 N.E.3d 582 (Ill. 2023).

Each prong is easily satisfied here, as [i] Mr. Mayhew's BIPA claims involve photographs taken by CCS customer Kabance during his May 13, 2023 graduation ceremony at Collinsville High School, *see* FAC ¶ 34; [ii] Collinsville High School is a public high school within Collinsville Community Unit School District 10;[7] and [iii] Kabance was working for Collinsville Community Unit School District 10 when Kabance took photos of Mr. Mayhew, sorted them using CCS's software, and made them available for purchase online using CCS's software.  In other words, CCS

---

[7] *See* Collinsville Kahoks – Collinsville Community Unit School District 10, *Collinsville High School*, https://www.kahoks.org/schools/collinsville-high-school/ (last accessed Oct. 27, 2023).

functioned as a "subcontractor" by providing Kabance with use of the software, and government subcontractors are expressly covered by Section 25(e).

Regarding the first prong, Kabance qualifies as a "contractor" of Collinsville Community Unit School District 10. The Illinois Appellate Court broadly interpreted the term "contractor" in *Enriquez*. *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 ("[T]he [BIPA] itself does not define 'contractor,' so we must apply its ordinary meaning. Black's Law Dictionary (11th ed. 2019) defines 'contractor' as '1. A party to a contract. 2. More specif., one who contracts to do work for or supply goods to another; esp., a person or company that agrees to do work or provide goods for another company."). Here, Collinsville High School and Kabance agreed that Kabance would provide photography services at the May 13, 2023 graduation ceremony and make the photos available online for viewing and purchase. *See* Decl. of Cate Nash ¶ 5 (attached hereto as **Exhibit B**); Nash Decl. Ex. 1 (2023 Commencement Agreement Between Collinsville High School and Kabance obtained via FOIA request);[8] *see also* Collinsville Kahoks – Collinsville Community Unit School District 10, *Celebrating the Class of 2021*, https://www.kahoks.org/headlines/celebrating-the-class-of-2021/ (last accessed Oct. 27, 2023) ("**Pictures** will be provided to graduates by Kabance Photo Service courtesy of CHS and Unit #10.").

Moreover, CCS qualifies as a "subcontractor" under Section 25(e) of the BIPA. A "subcontractor" is a business that undertakes to perform part or all of the obligations of another's contract. *See* Black's Law Dictionary (11th ed. 2019) ("subcontractor": "Someone who is awarded a portion of an existing contract by a contractor, esp. a general contractor"). Regardless of whether CCS has had a direct relationship with Collinsville High School, CCS has contracted directly with Kabance (the direct government contractor) in providing it with use of the Ecommerce platform,

---

[8] The Court can take judicial notice of this publicly available government contract obtained via FOIA request in considering CCS's Motion to Dismiss. *See* Fed. R. Evid. 201(b).

which Kabance needed to perform *its* contractual obligations owed to Collinsville High School – *i.e.*, to photograph graduates and make the photos available online for viewing and purchase.

Regarding the second prong, Collinsville High School is clearly an "agent of a State agency or local unit of government." 740 ILCS 14/25(e); *see, e.g.*, 30 ILCS 805/3(a) ("'Local government' means a municipality, county, township, other unit of local government, ***school district***, or community college district.") (emphasis added); *Bd. of Ed. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17, 20 (Ill. 1941) ("School districts are quasi municipal corporations.").

Regarding the third prong, Kabance (and by extension, CCS) worked for Collinsville High School "at the time [it] collected . . . biometric information." *Enriquez*, 2022 IL App (1st) 211414-U, ¶ 19 (affirming dismissal of BIPA complaint brought against company that contracted with governmental entity that owns Navy Pier in Chicago); *id.* ¶ 23 ("The phrase 'contractor working for a local unit of government' refers to a contractor in some type of employment or services relationship . . . with that unit of government.'"). Kabance promised to photograph Collinsville High School graduates, organize the photos, and make them available online for viewing and purchase. *See* Nash Decl. Ex. 1. Kabance relied on CCS's platform at each step of this process – meaning both Kabance (as a contractor) and CCS (as a subcontractor) were working for Collinsville High School at the time Mr. Mayhew's purported "biometric data" was collected, possessed, stored, and/or "profited from." The Court should therefore dismiss Plaintiffs' FAC with prejudice under Rule 12(b)(6).[9]

---

[9] Mr. Noren's claims also are barred by the "government contractor" exception, despite her photos having been taken during her graduation from Blackburn College, a "private institution." *See* FAC ¶ 47. Illinois courts acknowledge that even private entities can constitute local public entities in certain circumstances. *See, e.g.*, *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 32 (noting private company can be local public entity for purposes of Tort Immunity Act if it is "organized for the purpose of conducting public business" and it "remains subject to 'operational control by a unit of local government'") (citations omitted); *see also Doe v. Blackburn Coll.*, No. 06-3205, 2007 WL 647324, at *1 (C.D. Ill. Feb. 27, 2007) (acknowledging that immunity under Illinois School Code can apply to private institutions, including Blackburn College).

**C.     Plaintiffs Otherwise Fail To Allege Viable Claims Under Sections 15(a)-(c)**

**1.     Plaintiffs Allege No Facts Showing That CCS "Possessed" Plaintiffs' Biometric Data**

Sections 15(a) and 15(c) apply only to private entities "in possession" of biometrics. 740 ILCS 14/15(a), (c). The Illinois Supreme Court has found that "possession," as ordinarily understood, "occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *People v. Ward*, 215 Ill. 2d 317, 325 (2005). Thus, to trigger the BIPA's "possession" requirements, a defendant must "take control" of biometric data or "hold" that data "at his or her disposal." *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶¶ 1, 39-43, 57-58 (affirming trial court's dismissal of BIPA action where plaintiffs failed to allege that Apple collected or possessed their biometrics by asserting only that "Apple designed and owns the software that plaintiffs opted to use").

Here, Plaintiffs do not allege that CCS controlled or even knew about the data (including photos of them) that was allegedly uploaded to the Ecommerce platform. Nor could they, as the FAC and the declaration of Mr. Barges all demonstrate that CCS-customer photographers (not CCS) own and control the photos (and any data derived therefore) they have taken and uploaded to their Ecommerce accounts. *See, e.g.*, FAC ¶¶ 23-24 (noting CCS's "photographer clients" can use the Ecommerce platform to organize and sell "their images" to end users). Nothing in the FAC suggests CCS knew about these "photographer clients" uploading photos of Plaintiffs to the clients' Ecommerce accounts, or that CCS exercised, or could have exercised, any control over the data. *See Stauffer v. Sky Zone Franchise Group, LLC*, No. 19-L-311, July 22, 2022 Order at 3-4 (Cir. Ct. St. Clair Cty., Ill.) (dismissing Section 15(a) claim brought against franchisor-defendant Sky Zone where plaintiff "has not alleged sufficient facts . . . to allege possession of . . . biometric data" and noting Section 15(a) does not apply to entities that "have no interaction" with the plaintiff; "Sky Zone would not know when the initial purpose for collecting the information has been satisfied, and 3 years after the last interaction with Sky Zone would never occur") (attached hereto as **Exhibit C**). In short, it

15

defies common sense – and the text of the BIPA – to say that CCS "possessed" Plaintiffs' data when it was subject to customers' exclusive "dominion and control" at all times.  *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 962, 968-69 (N.D. Ill. 2020) (dismissing Section 15(a) claim against defendant who allegedly "stored" biometric data on behalf of other party because allegations of mere storage did not amount to "form of control" or show that defendant "could freely access the data").[10]

### 2.    Plaintiffs Allege No Facts Showing That CCS "Collected" Plaintiffs' Biometric Data

Unlike Sections 15(a) and 15(c), which apply to the "possession" of biometric data, only affirmative **actions** trigger Section 15(b): the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information. 740 ILCS 14/15; *see, e.g.*, *Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022) ("To recognize and honor this intentional distinction in the language used by the Illinois legislature in different sections of BIPA ('collection' vs. 'possession'), district courts from within the Seventh Circuit . . . have concluded that in order for § 15(b) to apply, the defendant must take an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information.") (emphasis in original).

Section 15(b) does not apply to CCS's alleged conduct, as Plaintiffs do not allege that CCS actively collected biometric data from them.  Plaintiffs claim they were photographed by a CCS **customer(s)** that has used CCS's "online platform for the marketing and sale of photos," and that such customer(s) has used CCS's "technology" to support their photography business(es).  FAC ¶¶ 4-5; *see id.* ¶ 24 ("[CCS] claims that . . . '*[p]hotographers* love to use [CCS's] facial recognition feature to get more images to consumers FAST'") (emphasis added); *id.* ¶¶ 23, 29 (screenshot of CCS's

---

[10] The court in *Heard* later allowed plaintiff's Section 15(a) claim to survive a second motion to dismiss.  *See Heard*, 524 F. Supp. 3d 840.  But the court did so only after plaintiff amended the complaint to add plausible allegations that defendant "exercise[d] some form of control" over plaintiff's data.  Plaintiffs' FAC includes no such allegations.

website directed to "potential photographer clients" regarding "Facial Recognition" feature: "It will change how you shoot events.").  Plaintiffs characterize CCS as having only the passive role of providing "technology" used by other entities – not as controlling or directing the use of the technology.  The mere fact that ***others*** may have collected Plaintiffs' data using CCS's platform – ***without any active involvement from CCS*** – is insufficient to hold CCS liable under Section 15(b).  *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) ("[F]or § 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data."); *Jones v. Microsoft Corp.*, 2023 WL 130495, at *3-4 (N.D. Ill. Jan. 9, 2023) ("Under a commonsense reading, . . . the private entity must undertake some effort to collect or obtain biometric [data]. . . . Microsoft contracted with Paychex to provide access to its cloud computing storage platform.  But this act . . . does not constitute an active step or affirmative act on Microsoft's part to get, acquire, or obtain [plaintiff's] biometric data.").

Nor do Plaintiffs allege that they had any direct relationship with CCS whereby CCS ***could have*** notified Plaintiffs and obtained their written consent. *See, e.g.*, *Zellmer v. Facebook, Inc.*, 2022 WL 976981, at *3-5 (N.D. Cal. Mar. 31, 2022) (Section 15(b) claim failed where plaintiff lacked direct relationship with defendant; "it would be patently unreasonable to construe BIPA to mean that Facebook was required to provide notice to, and obtain consent from, non-users who were for all practical purposes total strangers to Facebook").  Indeed, Plaintiffs ***admit*** that they "never knowingly dealt with [CCS]," *see* FAC ¶ 30, highlighting the absurdity that would result by interpreting the statute to require CCS to notify and obtain consent from "total strangers" like Plaintiffs.

### 3. Plaintiffs Allege No Facts Showing That CCS "Profited From" Plaintiffs' Data

Plaintiffs' Section 15(c) claim fails for the additional reason that, even taking all the facts in the FAC as true, Plaintiffs fail to adequately allege that CCS "profit[ed]" from their biometric data within the meaning of the BIPA.  Plaintiffs' Section 15(c) theory boils down to the proposition that

CCS used its photography software to "facilitate the sale of photographs through [the] 'Ecommerce platform'" – *i.e.*, to make it easier for CCS customers to sort their photos and then post them for sale online.  *See* FAC ¶ 114.  But that "profiting-by-facilitating-sales" theory does not state a valid claim under Section 15(c).

Section 15(c) exclusively "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value."  *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021).  Plaintiffs allege no such transaction.  Plaintiffs' allegations regarding Defendants purportedly using biometric data to increase the sales of ***photographs*** (which are undisputedly not subject to regulation under the BIPA) does not entail ***sharing*** biometric data with any entity.  As one court explained in rejecting a similar Section 15(c) claim:

> Plaintiffs' complaint is rife with allegations [about] how Amazon built its Rekognition Software [using] Plaintiffs' biometric information. But the Court agrees that nothing in the pleadings indicate[s] that the biometric information is being directly sold to any third party. Rekognition is [allegedly being sold to third parties], but Rekognition in and of itself is a set of algorithms. . . . ***The Court does not find that a set of algorithms created using biometric information, but not containing any biometric information itself falls under section 15(c)***. . . .

*Hogan v. Amazon.com, Inc.*, No 21 CH 02330, Dec. 6, 2022 Mem. Op. and Order at 3-4 (Cir. Ct. Cook Cty., Ill.) (attached hereto as **Exhibit D**) (emphasis added).  Thus, to adequately allege a Section 15(c) claim, Plaintiffs must "plead some facts leading to the inference that [their] 'biometric data is itself so incorporated into [a CCS product] that by marketing the product[s], [CCS] is commercially disseminating [their] biometric data.'"  *Id.* at 4 (citation omitted).  Plaintiffs allege no such facts, nor could they.  Their Section 15(c) claim must be dismissed.

## CONCLUSION

Because the Court lacks personal jurisdiction over CCS, and because Plaintiffs fail to state a claim against CCS under the BIPA, Plaintiffs' FAC should be dismissed with prejudice.  *See Arreola*

*v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where . . . the amendment would be futile.").

Dated: November 1, 2023                          Respectfully submitted,

                                                 /s/ *Gerald L. Maatman, Jr.*
                                                 Gerald L. Maatman, Jr.
                                                 (gmaatman@duanemorris.com)
                                                 Jennifer A. Riley
                                                 (jariley@duanemorris.com)
                                                 Tyler Zmick
                                                 (tzmick@duanemorris.com)
                                                 DUANE MORRIS LLP
                                                 190 South La Salle Street, Suite 3700
                                                 Chicago, Illinois 60603
                                                 Telephone: (312) 499-6700

                                                 **Attorneys for Defendant Candid Color Systems, Inc.**

19

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., an attorney, certify that on November 1, 2023, I caused a true and correct copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF System.


<u>/s/ *Gerald L. Maatman, Jr.*   </u>
Gerald L. Maatman, Jr.